UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANDREW SMIGELSKI, | Case No. 2:25-cv-1338 |
| Plaintiff, | |
| | Judge Edmund A. Sargus |
| v. | Magistrate Judge Kimberly A. Jolson |
| FBI, et al., | **PLAINTIFF'S RESPONSE TO** |
| Defendants. | **SHOW CAUSE ORDER** |

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff Andrew Smigelski respectfully submits this Response to the Court's Show Cause Order (Doc. 6) and demonstrates that his claims are neither "totally implausible" nor "frivolous" under *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), and that consolidation with Case No. 2:25-cv-1013 is not warranted at this time.

## INTRODUCTION

**1.**  This Court characterized Plaintiff's allegations as "fanciful" based on "alleged irregularities with his incoming mail." With respect, the Court has not yet examined the documentary evidence attached to Plaintiff's Complaint—evidence that proves the alleged irregularities are not allegations at all, but **documented facts** preserved in official United States Postal Service records.

**2.**  Specifically, Plaintiff presents an official USPS Tracking Plus™ Statement—a government document generated by the Postal Service itself—showing an entry dated **April 1, 2025** for a

package whose shipping label was not created until **June 11, 2025**. This is not a "fanciful" allegation—it is an impossibility documented in the government's own records.

**3.** A database entry cannot exist for a package two months before that package exists. The Court may reasonably ask: **what was that?** This impossible timestamp is either: (a) evidence of manual database manipulation, or (b) evidence of a catastrophic USPS database failure that requires explanation. Either way, it demands discovery and adjudication—not dismissal.

## I. LEGAL STANDARD: *APPLE V. GLENN* REQUIRES "TOTAL IMPLAUSIBILITY"

**4.** The Sixth Circuit in *Apple v. Glenn* held that sua sponte dismissal under Rule 12(b)(1) "is appropriate in only the rarest of circumstances where... the complaint is deemed **totally implausible**." 183 F.3d at 479 (emphasis added).

**5.** The *Apple* standard is extraordinarily high. The court emphasized that "most complaints will not be so clearly insufficient as to warrant dismissal under Rule 12(b)(1), but instead should be handled under Rule 12(b)(6)... if the complaint fails to state a claim upon which relief can be granted." *Id.*

**6.** *Apple* involved claims that were deemed "utterly implausible" because they lacked any factual predicate—the plaintiff made sweeping allegations about constitutional violations without any supporting facts. Here, Plaintiff provides **the government's own documentary evidence** proving that anomalies occurred.

**7.** A complaint supported by official government records documenting impossible database entries cannot be "totally implausible" as a matter of law.

## II. THE EVIDENCE: AN IMPOSSIBLE TIMESTAMP IN GOVERNMENT RECORDS

**8.**   Attached as **<u>Exhibit A</u>** is the official USPS Tracking Plus™ Statement for package tracking number 9405508105462933511036. This document was generated by the United States Postal Service—a defendant in this action—and obtained by Plaintiff through official USPS channels.

**9.**   The document shows the following sequence of events:

| Date & Time | Status of Item | Location |
|---|---|---|
| **Apr 01, 2025 12:00 am** | **DELAY FOR POSTAGE ASSESSMENT / ITEM IN TRANSIT TO DESTINATION** | **WASHINGTON, DC 20260** |
| Jun 11, 2025 7:38 pm | SHIPPING LABEL CREATED | PATERSON, NJ 07514 |
| Jun 12, 2025 9:40 am | ACCEPT OR PICKUP | 100369991 |

**10.**   **The April 1, 2025 entry is impossible.** A package cannot have a tracking event two months and ten days before its shipping label is created. This is not a matter of interpretation—it is a mathematical impossibility.

**11.**   The entry shows the package was at "WASHINGTON, DC 20260"—USPS Headquarters—for "POSTAGE ASSESSMENT" on April 1, 2025. But the package did not exist on April 1, 2025. The sender had not yet created it. USPS had not yet received it. There was nothing to assess.

**12.**   This impossible entry leads to only two possible conclusions:

   • **Conclusion A:** Someone with access to USPS tracking databases manually created this entry, and in doing so, made a typographical error by entering "April" instead

of a June date. This would constitute evidence of manual database manipulation—consistent with Plaintiff's allegations of coordinated surveillance.

- **Conclusion B:** The USPS tracking database experienced a catastrophic software failure that generated impossible timestamps. If true, this failure occurred only for packages addressed to Plaintiff—since similar anomalies appear across multiple packages sent to Plaintiff during the same period—which itself requires explanation.

**13.** Either conclusion warrants discovery. Neither conclusion supports dismissal as "totally implausible."

## III. MAIL SURVEILLANCE IS A DOCUMENTED FEDERAL PROGRAM —NOT A CONSPIRACY THEORY

**14.** This Court characterized Plaintiff's claims about FBI and USPS mail surveillance as "fanciful." However, federal mail surveillance is not a conspiracy theory—it is a well-documented government program that has been the subject of congressional hearings, Inspector General audits, academic scholarship, and ongoing litigation.

**15.** The USPS "Mail Covers Program" has existed since at least the late 1800s and allows law enforcement agencies to request that USPS record all information from the exterior of mail sent to or from targeted individuals. *See* Julie Lynn Rooney, *Going Postal: Analyzing the Abuse of Mail Covers Under the Fourth Amendment*, 70 Vand. L. Rev. 1741 (2017).

**16.** In 2014, the USPS Inspector General conducted an audit finding that the Postal Inspection Service did not have "sufficient controls" to ensure employees followed agency policies for handling mail covers. The audit revealed that approximately 13% of mail cover requests were approved for inappropriate reasons and 20% were honored without proper authorization.

**17.** The FBI is among the top requesters of mail cover data. According to congressional testimony, the USPS cooperates with 97% of law enforcement requests for mail surveillance, approving approximately 6,700 requests per year.

**18.** In May 2023, a bipartisan group of eight United States Senators—including Ron Wyden (D-OR), Rand Paul (R-KY), Steve Daines (R-MT), and Elizabeth Warren (D-MA)—wrote to the Chief Postal Inspector expressing concerns about Fourth Amendment implications of the Mail Covers Program and urging greater judicial oversight.

**19.** Claims of FBI-coordinated mail surveillance are currently being litigated in federal courts. *See, e.g., Quiñonez v. United States Postal Service*, No. 3:22-cv-03175 (N.D. Cal.) (Institute for Justice lawsuit challenging USPS mail seizures). Federal courts routinely permit cases to proceed where initial allegations might seem implausible but documentary evidence supports them. *See, e.g., Von Dutch Originals, LLC v. Cassel*, No. 2:04-cv-00255 (C.D. Cal. 2004) (granting preliminary injunction based on documentary evidence despite defendant's claims that allegations were unfounded).

**20.** Plaintiff's claims are squarely within the mainstream of federal civil rights litigation. The only distinguishing feature of this case is that Plaintiff possesses **documentary evidence of database manipulation**—the impossible April 1st timestamp—that most surveillance plaintiffs lack. **It's so obvious**: a tracking entry cannot predate the package's existence by seventy-one days.

## IV. THE TEMPORAL PROXIMITY ESTABLISHES PLAUSIBLE RETALIATION

**21.** Plaintiff's First Amendment retaliation claim is supported by compelling temporal proximity:

- **June 16, 2025:** FBI issues FOIA response to Plaintiff claiming "no records" exist

- **June 20, 2025:** First anomalous package ships to Plaintiff (tracking shows unusual routing through multiple states)

- **June-August 2025:** Multiple packages to Plaintiff experience identical "postage assessment" delays—on prepaid packages that required no assessment

**22.** The Sixth Circuit has held that temporal proximity alone can establish a prima facie case of retaliation. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("temporal proximity between protected activity and adverse action may be 'significant enough to constitute sufficient evidence of a causal connection'").

**23.** Here, the anomalies began within four days of the FBI's FOIA response. Prior to that date, Plaintiff had no issues with mail delivery. The sudden onset of systematic tracking anomalies immediately following Plaintiff's exercise of First Amendment rights (FOIA requests, federal litigation) raises, at minimum, a plausible inference of retaliation sufficient to survive the *Apple* standard.

# V. CONSOLIDATION IS PREMATURE AND WOULD PREJUDICE PLAINTIFF

**24.**  The Court's Order asks why this case should not be consolidated with Case No. 2:25-cv-1013. Plaintiff respectfully submits that consolidation is premature and would prejudice Plaintiff's ability to litigate distinct claims.

**25.**  Case No. 2:25-cv-1013 is a straightforward FOIA enforcement action seeking disclosure of records the FBI claims do not exist. The present case (2:25-cv-1338) is a constitutional tort action under *Bivens*, 42 U.S.C. § 1985, and the Federal Tort Claims Act alleging First and Fourth Amendment violations through warrantless surveillance and retaliation.

**26.**  These cases have different:

- **Legal theories:** FOIA disclosure vs. constitutional torts

- **Defendants:** The FOIA case names only the FBI; this case adds USPS and John Does

- **Relief sought:** Document disclosure vs. damages and injunctive relief

- **Discovery needs:** FOIA cases involve Vaughn indices and in camera review; this case requires depositions and interrogatories regarding surveillance operations

**27.**  However, if the Court determines that consolidation promotes judicial economy, Plaintiff does not oppose consolidation for discovery purposes only, with separate dispositive motions and trials.

# VI. THIS CASE PRESENTS JUSTICIABLE CLAIMS THAT WARRANT ADJUDICATION

**28.** Plaintiff brings well-established constitutional claims:

- **Fourth Amendment (*Bivens*):** Warrantless interception and inspection of mail violates the Fourth Amendment. *Ex parte Jackson*, 96 U.S. 727 (1878) (mail entitled to Fourth Amendment protection).

- **First Amendment Retaliation (*Bivens*):** Retaliating against citizens for exercising FOIA rights violates the First Amendment right to petition government.

- **42 U.S.C. § 1985 Conspiracy:** Coordinated action between FBI and USPS to deprive Plaintiff of constitutional rights.

- **Federal Tort Claims Act:** Tortious interference with mail by federal employees acting within scope of employment.

**29.** These are recognized causes of action in federal courts. The only question is whether Plaintiff has alleged sufficient facts to proceed. Plaintiff submits that an impossible database timestamp in official government records is not merely "sufficient"—it is extraordinary evidence rarely available to civil rights plaintiffs.

# VII. THE COURT SHOULD PERMIT DISCOVERY BEFORE DISMISSAL

**30.** Even if the Court harbors doubts about Plaintiff's claims, the appropriate remedy is not dismissal but discovery. The impossible April 1st timestamp demands explanation. Either:

- USPS can produce database audit logs showing legitimate system error, or

- USPS cannot explain the entry—which would support Plaintiff's allegations of manual manipulation

**31.** Dismissal at this stage would foreclose any opportunity to obtain that explanation. The Federal Rules of Civil Procedure contemplate that factual disputes be resolved through discovery and, if necessary, trial—not by judicial determination that documented anomalies are "implausible."

## CONCLUSION

Plaintiff has presented official government records showing an impossible database entry—an April 1, 2025 tracking event for a package that did not exist until June 11, 2025. This evidence is not "fanciful" or "totally implausible" under *Apple v. Glenn*. It is documented, verifiable, and demands explanation through the discovery process.

Plaintiff's claims of mail surveillance are consistent with well-documented federal programs that have been the subject of congressional oversight, Inspector General audits, and ongoing federal litigation. The temporal proximity between Plaintiff's protected First Amendment activity and the onset of mail anomalies establishes a plausible retaliation claim.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

- A. Decline to dismiss this action as frivolous under *Apple v. Glenn*;

- B. Permit this case to proceed to service of process and discovery;

- C. Defer ruling on consolidation until after Defendants respond; and

- D. Grant such other relief as the Court deems just and proper.

Respectfully submitted,


/s/ Andrew Smigelski

_____

Andrew Smigelski, Pro Se

1015 Bryan Road

Sugar Grove, Ohio 43155


Date: December 14, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2025, I filed this Response to Show Cause Order with the Clerk of Court using the CM/ECF system. As Defendants have not yet been served, no service copy is required at this time.

/s/ Andrew Smigelski
_____
Andrew Smigelski, Pro Se

# EXHIBIT LIST

**<u>Exhibit A:</u>** USPS Tracking Plus™ Statement for Package 9405508105462933511036 showing April 1, 2025 impossible entry (attached)

*Note: Additional exhibits referenced in Plaintiff's Complaint (photographs of packages, Amazon correspondence, additional USPS tracking statements) are available upon request and will be submitted to the Court upon direction.*