Case No. 2:25-cv-01338-EAS-KAJ

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ANDREW MARK SMIGELSKI,
        Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,
        Defendants.

**Case No. 2:25-cv-01338-EAS-KAJ**
**Judge:** Edmund A. Sargus, Jr.
**Magistrate Judge:** Kimberly A. Jolson

## SUPPLEMENTAL FILING: THE SOUTHERN DISTRICT OF OHIO'S PATTERN OF FAILING TO INVESTIGATE CHILD SEXUAL ABUSE

*From Jeffrey Epstein's "Wealthy Ohio Businessman" to a Rural Police Officer*

### I. INTRODUCTION: THE EPSTEIN FILES DEMAND THIS COURT'S ATTENTION

1. On December 19, 2025—less than two weeks before this filing—the U.S. Department of Justice released over 30,000 files from the Jeffrey Epstein sex trafficking investigation. These files reveal that in July 2019, the FBI identified Leslie Wexner, Ohio's wealthiest resident, as one of ten "co-conspirators" requiring contact. An internal FBI email states: *"I do not know about Ohio contacting Wexner."*

2. Wexner resided in New Albany, Ohio—squarely within this District. The FBI's Crimes Against Children Human Trafficking Unit identified him as a co-conspirator in the most notorious child sex trafficking case in American history. Yet by the FBI's own internal communications, there was uncertainty about whether Ohio-based investigators had even made contact. Wexner was never charged. Epstein died weeks later. The matter was dropped.

3. **This is not ancient history offered for shock value. This is direct evidence of a pattern within the Southern District of Ohio of institutional failure to investigate credible allegations of child sexual abuse when the accused is wealthy, connected, or in a position of authority.**

4. Plaintiff experienced this pattern firsthand on November 25, 2024, when federal agents at the U.S. Attorney's Office in Columbus refused to accept a notarized affidavit detailing allegations of child sexual abuse by a current Ohio law enforcement officer. The parallels are stark: credible allegations, Ohio jurisdiction, institutional refusal to act.

### II. THE NOVEMBER 25, 2024 INCIDENT

5. On November 25, 2024, between 2:00 PM and 3:00 PM, Plaintiff appeared at the U.S. Attorney's Office for the Southern District of Ohio in Columbus, Ohio, to submit a notarized affidavit. The affidavit detailed allegations of child sexual abuse by Josh

Page 1

Dixon, a police officer in Glouster, Ohio, based on disclosures made to Plaintiff by the adult victim.

6. Present in the office were an FBI agent and an ATF agent. Plaintiff provided them with the affidavit and supporting documentation. The affidavit expressed specific concerns about the safety of Officer Dixon's minor son, who was approaching the same age as the victim at the time of the alleged abuse, as well as other children on a youth baseball team that Dixon coaches.

7. **Rather than accept the affidavit or document Plaintiff's attempt to submit it, the agents engaged in conduct that suggested an attempt to reverse the roles of reporter and subject:**

    (a) The agents requested that Plaintiff write down his contact information, stating they needed it "to make sure [he] sent it to the right place";

    (b) When Plaintiff asked why the agents would not simply accept the affidavit themselves, or have the receptionist fax it to the appropriate office, the FBI agent responded that doing so would be "*instant gratification*";

    (c) The agents declined to accept the affidavit or provide any acknowledgment of Plaintiff's submission attempt;

    (d) The agents declined to sign an acknowledgment of refusal form that Plaintiff presented;

    (e) The receptionist, from behind security glass, stood up and shouted at the agents not to sign any acknowledgment, appearing to provide legal advice that discouraged cooperation with Plaintiff's submission attempt.

8. **Upon information and belief, database lookup records exist from this incident documenting the agents' attempts to investigate Plaintiff rather than the allegations of child abuse he was reporting.** These records would show that federal resources were directed toward scrutinizing the citizen reporter rather than the reported child predator.

## III. THE ATHENS COUNTY FOLLOW-UP: PREDICTED OUTCOME CONFIRMED

9. The federal agents directed Plaintiff to contact local law enforcement—specifically the Athens County Sheriff's Office—to report the allegations. Plaintiff explicitly warned the agents that this would be futile because local law enforcement in rural Ohio operates as a "good old boys network" that protects its own.

10. Plaintiff nevertheless followed the agents' direction and contacted the Athens County Sheriff's Office. The response confirmed Plaintiff's prediction with disturbing precision.

11. **During a phone call with a deputy detective at the Athens County Sheriff's Office:**

    (f) The deputy detective stated that he personally knew Officer Josh Dixon;

    (g) The deputy detective stated he was "*sure he wouldn't do anything like that*";

    (h) The deputy detective explicitly stated he "*will not be investigating this*."

12. This is precisely why federal oversight of crimes against children exists. When local law enforcement personally knows the accused and prejudges his innocence based on that personal relationship—refusing to investigate a notarized affidavit containing specific, credible allegations—federal authorities are supposed to step in. Instead, the FBI agents at the U.S. Attorney's Office deflected to the very local network that Plaintiff warned them would refuse to act.

13. The result: a police officer alleged to have sexually abused a child remains on duty, coaching youth baseball, with access to children the same age as his alleged victim at the time of the abuse. No investigation has occurred at any level. The federal government's response to a detailed, notarized affidavit of child sexual abuse was to lecture the reporter about "instant gratification" and send him to local authorities who refused to act based on personal loyalty to the accused.

## IV. THE NOVEMBER 25 INCIDENT AS A TRIGGER FOR SURVEILLANCE

14. **This Court should consider whether the November 25, 2024 incident is not merely evidence of a pattern, but a direct trigger for the surveillance and harassment that forms the basis of Plaintiff's claims in this case.**

15. On November 25, 2024, Plaintiff walked into the U.S. Attorney's Office to report child sexual abuse by a law enforcement officer. He left having provided federal agents with his personal contact information—at their request—while they refused to accept or document his complaint. Upon information and belief, those agents ran database queries on Plaintiff during or after that encounter.

16. Consider the sequence: A citizen attempts to report a police officer for child sexual abuse. Federal agents decline to investigate the officer. Instead, they collect the citizen's information and query federal databases. The citizen is now flagged in federal systems—not as a victim, not as a witness, but as a person of interest who walked into a federal building making allegations against law enforcement.

17. Shortly thereafter, Plaintiff began experiencing the systematic surveillance and harassment documented in this case: mail interception, package tampering, cyber attacks, and ultimately a home invasion. Plaintiff had also filed FOIA requests and initiated federal litigation against the FBI, providing additional motivation for retaliation. But the November 25 incident represents a distinct triggering event—the moment Plaintiff was transformed in federal databases from an ordinary citizen into someone who makes allegations against law enforcement.

18. **The database lookup records from November 25, 2024 are therefore directly relevant to Plaintiff's claims.** They would show: (a) that federal agents ran queries on Plaintiff rather than on the accused child abuser; (b) what flags or alerts, if any, were placed on Plaintiff's name or information; (c) whether those queries triggered notifications to other agencies; and (d) whether Plaintiff's information was disseminated beyond the U.S. Attorney's Office.

19. If the government's response to a citizen reporting child abuse is to surveil and harass the reporter rather than investigate the report, that is not merely institutional failure— it is the weaponization of federal law enforcement against citizens who attempt to protect children. It would constitute retaliation of the most chilling kind: ensuring that

anyone who reports abuse by law enforcement faces consequences worse than the accused.

## V. THE EPSTEIN FILES: WHAT THEY REVEAL ABOUT THIS DISTRICT

20. The December 2025 Epstein file release was mandated by Congress and signed into law by President Trump. These are official Department of Justice records revealing the FBI's own internal assessment of their investigation. The documents show:

    (i) FBI agents and prosecutors fanned out across the United States to serve grand jury subpoenas on ten identified co-conspirators during the week of Epstein's July 2019 indictment;

    (j) The FBI's Crimes Against Children Human Trafficking Unit (CACHTU) was coordinating these efforts;

    (k) Leslie Wexner was identified by name in FBI communications as one of the ten co-conspirators;

    (l) A July 9, 2019 email referenced "a wealthy business man in Ohio" who "hadn't yet been served a subpoena";

    (m) An FBI email response stated: *"I do not know about Ohio contacting Wexner."*

21. **The significance of this cannot be overstated.** Leslie Wexner founded The Limited, Victoria's Secret, Bath & Body Works, and Abercrombie & Fitch—all headquartered in Columbus, Ohio. He chaired The Ohio State University Board of Trustees and the Columbus Partnership. He currently chairs OSU's Wexner Medical Center Board. His mark on Central Ohio is so profound that buildings, streets, and institutions bear his name throughout the region.

22. And when the FBI's Crimes Against Children Human Trafficking Unit identified him as a co-conspirator in a child sex trafficking case, *no one in Ohio appears to have contacted him.* The FBI's own emails reflect uncertainty about whether anyone in this state took action.

23. Epstein died by suicide on August 10, 2019—approximately one month after those emails were sent. Wexner was never charged. He has never been publicly identified by investigators as part of any criminal activity. His attorneys now claim he "cooperated fully" and was "neither a co-conspirator nor target." But the FBI's contemporaneous communications tell a different story: he was on a list of ten co-conspirators, and Ohio apparently didn't act.

24. **This is the pattern.** When allegations of child sexual abuse involve powerful, wealthy, or connected individuals in Ohio, the Southern District of Ohio does not act. Whether it's a billionaire retail magnate or a small-town police officer, the institutional response is the same: deflection, inaction, protection of the accused.

## VI. JURISDICTIONAL NEXUS

25. The Southern District of Ohio had clear jurisdiction over both matters:

    (n) **Wexner/Epstein:** Wexner resided in New Albany, Ohio. His business empire—L Brands, Victoria's Secret, Bath & Body Works, Abercrombie & Fitch—was

  headquartered in Columbus. Any investigation of his alleged role as a co-conspirator would necessarily involve the Southern District of Ohio.

 (o) **Dixon:** Josh Dixon is a police officer in Glouster, Ohio, located in Athens County within the Southern District of Ohio. His alleged victim resides in Ohio. The children currently at risk are in Ohio.

26. In both cases, the Southern District of Ohio was the appropriate venue for investigation. In both cases, credible allegations of child sexual abuse were brought to the attention of federal authorities. In both cases, the response was institutional paralysis or active resistance.

## VII. THE QUESTION THIS COURT MUST CONSIDER

27. When a citizen presents a notarized affidavit alleging child sexual abuse by a law enforcement officer, and the federal agents' response is to collect the citizen's contact information while refusing to accept or document the complaint, what message does that send?

28. When FBI internal emails reveal that Ohio investigators may have failed to even contact a billionaire identified as a "co-conspirator" in a child sex trafficking investigation, what does that say about institutional priorities?

29. Plaintiff does not allege that anyone in the U.S. Attorney's Office or FBI is personally complicit in child abuse. Plaintiff alleges something arguably worse: a culture of institutional cowardice that treats reports of child abuse by powerful or connected individuals as problems to be managed rather than crimes to be investigated.

## VIII. EXHIBITS

Plaintiff attaches the following exhibits documenting the exhaustive efforts to report child sexual abuse through every available channel, and the systematic institutional failure at every level:

- **Exhibit A:** Notarized Affidavit dated November 25, 2024, detailing allegations of child sexual abuse [REDACTED - victim and minor names removed]

- **Exhibit B:** Refusal to Accept Affidavit form (unsigned by federal agents)

- **Exhibit C:** Affidavit of Effort to File Concerns of Abuse, notarized November 21, 2024

- **Exhibit D:** Complaint to Office of Inspector General dated November 26, 2024

- **Exhibit E:** Office of Inspector General Response dated December 18, 2024, forwarding matter to FBI Inspection Division and Ohio Attorney General's Office

- **Exhibit F:** Phone record of April 1, 2024 call to Athens County CPS (22 minutes, 30 seconds) - first report, no follow-up received. *Note: Handwritten notes visible in original photograph have been redacted as they contain the victim's name; the phone record itself showing the call date, duration, and CPS phone number remains visible.*

- **Exhibit G:** Phone records of November 17-18, 2024 calls to Athens County CPS (multiple calls) - second reporting attempt

- **Exhibit H:** Letter to DOJ Criminal Division dated November 26, 2024, documenting USAO-SDOH refusal [REDACTED - victim name removed]
- **Exhibit I:** Formal written concern regarding potential risk to children by individual in youth coaching role, documenting two CPS reports with no confirmation of investigation
- **Exhibit J:** Ohio Attorney General's Office response dated January 8, 2025, declining to intervene despite DOJ OIG referral, stating office only represents state agencies

30. **These exhibits document six levels of institutional failure:** (1) Athens County CPS - April 2024, no follow-up; (2) Athens County CPS - November 2024, no action; (3) U.S. Attorney's Office - November 25, 2024, refused to accept affidavit; (4) Athens County Sheriff - refused to investigate based on personal relationship with accused; (5) DOJ Office of Inspector General - forwarded to others; (6) Ohio Attorney General - declined to intervene. At no point did any agency investigate the reported child sexual abuse.

## IX. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

31. Accept this supplemental filing into the record;

32. Order Defendants to preserve and produce all records related to Plaintiff's November 25, 2024 visit to the U.S. Attorney's Office, including but not limited to: database queries run on Plaintiff's name or information; any flags, alerts, or notifications generated; visitor logs; internal communications; and any dissemination of Plaintiff's information to other agencies;

33. Order Defendants to identify whether any surveillance, investigation, or monitoring of Plaintiff was initiated or intensified following the November 25, 2024 incident;

34. Consider the pattern of institutional failure documented herein—from the Epstein investigation to Plaintiff's experience—when evaluating Plaintiff's claims of retaliatory surveillance and government misconduct;

35. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Andrew Mark Smigelski*
**Andrew Mark Smigelski**
Plaintiff, Pro Se
1015 Bryan Road
Sugar Grove, Ohio 43155
614-607-1230
smigelski.andy@gmail.com

**Dated:** January 1, 2026

Case No. 2:25-cv-01338-EAS-KAJ

**CERTIFICATE OF SERVICE**

I hereby certify that on January 1, 2026, a true and correct copy of the foregoing Supplemental Filing was filed electronically via the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ Andrew Mark Smigelski*
Andrew Mark Smigelski